CARLTON, J.,
 

 for the Court.
 

 ¶ 1. Charles and Carolyn Prather died in a car accident after crashing into a bridge on Mississippi Highway 8 in Calhoun County, Mississippi. Their beneficiaries, the Appellants,
 
 [1]
 
 filed a wrongful death suit against the Mississippi Transportation Commission (MTC). The Appellants claimed in their suit that the MTC had negligently maintained Highway 8 and had failed to warn of dangerous conditions on the road, thus, causing the Prathers’ deaths. The MTC moved for summary judgment and claimed immunity under the Mississippi Toi't Claims Act (MTCA) pursuant to Mississippi Code Annotated section ll-46-9(l)(d) (Supp.2008). The circuit court granted the MTC’s motion for summary judgment. The Appellants argue on appeal that the circuit court erred in granting the MTC’s motion for summary judgment because the MTC was not entitled to governmental immunity under section ll-46-9(l)(v) (Supp.2008) of the MTCA. We find no error and affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. While driving in the rain late at night, Charles hydroplaned on Highway 8 and crashed into a bridge. He and his wife, Carolyn, died instantly as a result of the crash. The Appellants subsequently sued the MTC for the Prathers’ alleged wrongful deaths. The MTC moved for summary judgment and claimed that it was exempt from liability pursuant to sec
 
 *965
 
 tion ll-46-9(l)(d) of the MTCA. Section 11 — 46—9(l)(d) reads:
 

 (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
 

 [[Image here]]
 

 (d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]
 

 ¶ 3. The circuit court stated the following in its order granting MTC’s motion for summary judgment:
 

 The maintenance of Highway No. 8 at the time of the accident required the exercise of engineering judgment and judgment as to the allocation of limited financial resources in order to perform maintenance on the various public highways within the district where the bridge is located.... The maintenance of [Highway 8] at the time of the accident was a discretionary function. The [MTC] used ordinary care in maintaining the bridge and the highway approaching the bridge.
 
 [2]
 
 The Court is therefore of the opinion that [the] Plaintiffs have failed to convince the Court that the maintenance of [Highway 8] and the bridge in question is ministerial.
 

 ¶ 4. The Appellants claim that the MTC was liable for the Prathers’ deaths because the MTC had failed to (1) maintain Highway 8 so as to minimize hydroplaning in rainy conditions, (2) put guardrails on the bridge the Prathers crashed into, and (3) warn the public of the dangerous conditions on Highway 8. The Appellants claim that by statute (although they fail to cite to any governing statutory authority regarding the maintenance of highways in their briefs), the MTC is charged with the duty to keep existing bridges and roadways in compliance with the latest safety designs and appurtenances and that the MTC failed to do so in this case.
 
 See
 
 Miss. Code Ann. §§ 65-1-61 (Rev.2005) and 65-1-65 (Rev.2005) (directing the MTC to consider funding and practicability when maintaining and repairing roads).
 
 [3]
 

 ¶ 5. The Appellants also claim that the MTC failed to comply with the MTC’s “overall objective” in its design manual. The Appellants cite to section 11-2.07.04, allegedly of the MTC’s design manual, entitled “Safety Appurtenances,” which states, in part, that “[d]uring the design of a 3R project, all existing safety appurtenances
 
 should
 
 be examined to determine if they meet all the latest safety performance and design criteria.” However, the Appellants never contend that the maintenance of Highway 8 was a 3R design project.
 

 ¶ 6. The Appellants cite subsections 11-46-9(l)(d), (g), and (v) in support of their proposition that this Court should reverse the trial court’s grant of summary judg
 
 *966
 
 ment and allow this matter to proceed to trial on the issues of fact. Subsections 11-46-9(l)(d), (g), and (v) read as follows:
 

 (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
 

 [[Image here]]
 

 (d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused;
 

 [[Image here]]
 

 (g) Arising out of the exercise of discretion in determining whether or not to seek or provide the resources necessary for the purchase of equipment, the construction or maintenance of facilities, the hiring of personnel and, in general, the provision of adequate governmental services;
 

 [[Image here]]
 

 (v) Arising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due eare[.]
 

 ¶ 7. In turn, the MTC states that the trial court properly granted MTC’s motion for summary judgment based on the discretionary exception from liability under section 11 — 46—9(l)(d). Additionally, the MTC claims that its motion for summary judgment was also properly granted based on supporting documents, which included the affidavit of MTC’s former District Two Engineer, Jimmy Dickerson. The MTC contends that Dickerson’s affidavit demonstrates that the MTC was authorized by statute to use its discretion in maintaining the roads under its jurisdiction and considered the policy implications of doing so. The MTC states the following in its brief about Dickerson’s deposition and affidavit testimony:
 

 Because funds were limited for purposes of performing maintenance on existing state highways such as Mississippi Highway 8, the District Engineer [Dickerson] had to make judgment calls when work appears to be necessary as to what type of work is to be performed in order to maintain or upgrade the various highways within the [district. There must be a balancing of the competing needs for maintenance within the [district and judgment calls made as to when and where work will be performed and to what extent any safety upgrades are necessary or desirable considering the funding available for each year and the needs and/or conditions of the various highways within the [district.
 

 STANDARD OF REVIEW
 

 ¶ 8. For a summary judgment motion to be properly granted, no genuine issue of material fact can exist, and the moving party must be entitled to judgment as a matter of law. M.R.C.P. 56(c). We apply a de novo standard of review to a trial court’s grant of summary judgment.
 
 Moss v. Batesville Casket Co.,
 
 935 So.2d 393, 398(¶ 15) (Miss.2006). “The moving party has the burden of demonstrating that no genuine issue of material fact exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact.”
 
 Howard v. City of Biloxi,
 
 943 So.2d 751, 754(¶4) (Miss.Ct.App.2006).
 

 
 *967
 
 WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE MTC IS IMMUNE FROM SUIT PURSUANT TO THE MTCA.
 

 ¶ 9. The principal statutory law relevant to this case falls under the MTCA pursuant to section 11 — 46—9(l)(a—y) (Supp.2008). This section is used to determine whether governmental entities and their employees acting within the scope of their duties are immune from liability pursuant to the exemptions found therein.
 
 Miss. Dep’t of Transp. v. Trosclair,
 
 851 So.2d 408, 413(¶ 12) (Miss.Ct.App.2003).
 

 ¶ 10. The Appellants claim that the MTC bears liability under the MTCA based on section ll-46-9(l)(v) as the rutting on Highway 8 was an unobvious, dangerous condition of which the MTC had knowledge, and, of which, the MTC did not warn the public. The Appellants conclude that the failure to warn of a known, unob-vious danger is not discretionary pursuant to section 11 — 46—9(l)(d). Rather, the Appellants contend it is a ministerial duty to warn pursuant to section ll-46-9(l)(v); therefore, the MTC is not immune from suit in this case.
 

 ¶ 11. In turn, the MTC argues that the maintenance of the public highways and the placement of warning signs are discretionary functions pursuant to section 11-46 — 9(l)(d). Furthermore, the MTC argues that pursuant to
 
 Willing v. Estate of Benz,
 
 958 So.2d 1240, 1254-55(¶40) (Miss.Ct.App.2007), the MTC is exempt from liability because if one of the exemptions from liability found in section ll-46-9(l)(a-y) applies, it does not matter if the application of other exemptions in that section involve a question of material fact; summary judgment must be granted on the exemption established as a matter of law.
 

 ¶ 12. In order to address the merits of the Appellants’ and MTC’s arguments, our discussion will cover three areas: (1) strict construction of the MTCA, (2) discretionary acts pursuant to 11 — 46—9(l)(d), and (3) “Frasier’s Octupus.”
 

 I. Strict Construction of the MTCA
 

 ¶ 13. As to sovereign immunity, “when [the supreme court] abolished common-law sovereign immunity in
 
 Pruett v. City of Rosedale,
 
 421 So.2d 1046 (Miss.1982), [the court] expressly stated that [it][was] doing so because the judiciary was not the appropriate branch of government to regulate sovereign immunity.”
 
 Wells ex rel. Wells v. Panola County Bd. of Educ.,
 
 645 So.2d 883, 889 (Miss.1994).
 
 “Pruett
 
 was a mandate to the [Legislature to assume full responsibility for the regulation of sovereign immunity[.]”
 
 Id.
 
 In response to
 
 Pruett,
 
 the Mississippi Legislature passed the MTCA.
 

 ¶ 14. In the MTCA, the Mississippi Legislature waived sovereign immunity for the torts of governmental entities and their employees acting within the course and scope of their employment from July 1, 1993, as to the State of Mississippi, and from October 1, 1993, as to its political subdivisions. Miss.Code Ann. § 11-46-5 (Rev.2002). “The immunity is limited to specific claims confined to a certain period of time with significant limits on the measure of damages that can be recovered.”
 
 Ellisville State Sch. v. Merrill,
 
 732 So.2d 198, 202(¶ 18) (Miss.1999).
 

 ¶ 15. In
 
 Ellisville,
 
 the court explained that the MTCA was to be interpreted as expressly written or by necessary implication in order to carry out the Legislature’s intent to strictly limit the State’s waiver of state sovereign immunity.
 
 Id.
 
 at 201-02 (¶¶ 18-25). The court stated that: “[I]t is obvious the Legislature did not intend for the ... MTCA to be subordinate to other statutes of limitations or legal doctrines of this State.”
 
 Id.
 
 at 202(¶ 24).
 

 
 *968
 
 ¶ 16. For the above reasons, we strictly construe section ll-46-9(l)(a-y) in accordance with its express wording.
 
 See id.
 
 at 202(¶ 25) (stating that plaintiffs have “a narrow passage through the previously impenetrable wall of sovereign immunity”);
 
 see, e.g., Bunton v. King,
 
 995 So.2d 694, 696(¶ 9) (Miss.2008) (stating that Mississippi law requires strict compliance with the MTCA’s 90-day notice requirement).
 

 ¶ 17. The MTCA was amended as late as 2008. “[C]ongressional re-enactment of a statute creates a presumption of legislative approval of the Court’s prior interpretations of that statute.”
 
 Caves v. Yarbrough,
 
 991 So.2d 142, 153(¶ 42) (Miss.2008). Hence, a presumption exists that this Court has correctly interpreted the MTCA’s provisions applicable in this case since the Legislature has not enacted provisions altering the Court’s interpretation of the exemptions and waivers of immunity.
 
 See id.
 

 ¶ 18. Finally, even if we may not agree with the wisdom of the statutes regarding the waiver of state sovereign immunity passed by the Legislature, we are bound to follow a statute’s clear, expressed mandate.
 
 See Wells ex rel. Wells,
 
 645 So.2d at 889. The supreme court stated that:
 

 Courts cannot pass judgment upon the wisdom, practicality or even folly of a statute. We must follow it unless it clearly impinges upon some Constitutional mandate, and our Constitution neither gives wise statutes passing grades nor flunks the improvident ones. This is solely the prerogative of the people acting through their Legislature.
 

 Id.
 
 (quoting
 
 Presley v. Miss. State Highway Comm’n.,
 
 608 So.2d 1288, 1295 (Miss.1992)).
 

 II. Determining Whether an Act is Discretionary Pursuant to Section 11^6-9(l)(d)
 

 ¶ 19. “In determining whether governmental conduct is discretionary the Court must answer two questions: (1) whether the activity involved an element of choice or judgment; and if so, (2) whether the choice or judgment in supervision involves social, economic or political policy alternatives.”
 
 Dancy v. E. Miss. State Hosp.,
 
 944 So.2d 10, 16(¶ 18) (Miss.2006) (citation omitted).
 

 ¶ 20. Regarding the first question, this Court must first determine whether the function is discretionary or ministerial.
 
 Id.
 
 at 16(¶ 19). A duty is discretionary if it requires an official to use her own judgment and discretion in order to carry out the duty.
 
 Id.
 
 (citation omitted). “On the other hand, ‘a duty is ministerial and not discretionary if it is imposed by law and its performance is not dependent on the employee’s judgment.’ ”
 
 Miss. Dep’t of Human Servs. v. S.W.,
 
 974 So.2d 253, 258(¶ 11) (Miss.Ct.App.2007);
 
 see, e.g., Barrett v. Miller,
 
 599 So.2d 559, 567 (Miss.1992) (stating that sheriff deputies were not exercising discretionary authority in searching a home where the deputies were acting under a search warrant which gave them the authority to search and set forth parameters in which the search should be carried out). Moreover, “[t]he United States Supreme Court has explained that ‘[t]he requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,’ because ‘the employee has no rightful option but to adhere to the directive.’”
 
 Id.
 
 (quoting
 
 United States v. Gaubert,
 
 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)).
 

 ¶ 21. As to the second question, if the act at issue does require discretion or
 
 *969
 
 judgment, then for sovereign immunity to be triggered under the discretionary exemption, the act must also have been subject to some form of public policy analysis.
 
 Pritchard v. Von Houten,
 
 960 So.2d 568, 581(¶ 84) (Miss.Ct.App.2007). The supreme court has stated that “when established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a [government agent to exercise discretion, it must be presumed that the agent’s acts are
 
 grounded in policy when exercising that discretion.” Dancy,
 
 944 So.2d at 18(¶23) (quoting
 
 United States v. Gaubert,
 
 499 U.S. 315, 324, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)).
 

 ¶ 22. Under our case law, there is “a wide variety of governmental conduct [that] has been held ... to involve the implementation of social, economic or political policy.” Jim Frasier,
 
 Recent Developments in Mississippi Toit Claims Act Law Pertaining to Notice of Claim and Exemptions to Immunity Issues: Substantial/Strict Compliance, Discretionary Acts, Police Protection and Dangerous Conditions,
 
 76 Miss. L.J. 973, 991 (2007). These include the following cases:
 

 The manner in which a police department supervises, disciplines and regulates its police officers],
 
 City of Jackson v. Powell,
 
 917 So.2d 59, 74 (Miss.2005); the decision to grant or deny parole,
 
 Doe v. State ex rel. Mississippi Dep’t of Corr.,
 
 859 So.2d 350 (Miss.2003); the placement or non-placement of traffic control devices or signs,
 
 Barrentine v. Miss. Dep’t of Transp.,
 
 913 So.2d 391 (Miss.Ct.App.2005); the acts or omissions of high school football coach which caused a player to suffer heatstroke during practice,
 
 Harris ex rel. Harris v. McCray,
 
 867 So.2d 188 (Miss.2003); and the decision of emergency medical personnel to use a “load and go” approach on an expectant mother.
 
 Sanders v. Riverboat Corp. of Mississippi-Vicksburg,
 
 913 So.2d 351 (Miss.Ct.App.2005).
 

 Id.
 

 ¶ 23. Our inquiry thus turns on whether the challenged governmental conduct required the MTC to exercise its own policy-based judgment, or whether the actors were instead bound to perform their duties in accordance with mandatory directives imposed by law.
 
 See S.W.,
 
 974 So.2d at 258-59(¶ 11). We now examine the statutes governing the maintenance and repair of highways which are found in sections 65-1-61 and 65-1-65.
 

 ¶ 24. Regarding paving, section 65-1-61 states in part that:
 

 It shall be the duty of the Transportation Commission to have the Transportation Department construct, reconstruct and maintain, at the cost and expense of the state, all highways under its jurisdiction
 
 up to such standards and specifications
 
 and with such surfacing material
 
 as the Transportation Commission may determine,
 
 such paving to be done for each project
 
 as rapidly as funds are made available
 
 therefor and,
 
 as nearly as practicable,
 
 immediately upon the completion of all work performed pursuant to grade, drainage and bridge contracts for the project.
 

 (Emphasis added). In the above statute, the phrase “as the [MTC] may determine” indicates that the MTC’s employees must use their own “judgment or discretion” in maintaining highways in MTC’s jurisdiction according to its own standards and specifications.
 
 See Barton v. Blount,
 
 981 So.2d 299, 303(¶ 13) (Miss.Ct.App.2007) (stating that “[w]hen a statute is plain and unambiguous, we must afford the statute its plain meaning”).
 

 ¶ 25. Regarding maintenance, section 65-1-65 states:
 

 
 *970
 
 It shall be the duty of the State Highway Commission to have the State Highway Department
 
 maintain all highways
 
 which have been or which may be hereafter taken over by the State Highway Department for maintenance in such a way as to afford convenient, comfortable, and economic use thereof by the public at all times.
 
 To this end it shall be the duty of the director, subject to the rules, regulations and orders of the commission as spread on its minutes,
 
 to organize an adequate and continuous patrol for the maintenance, repair, and inspection of all of the state-maintained state highway system, so that said highways may be kept under proper maintenance and repair at all times.
 

 (Emphasis added). Under section 65-1-65, the MTC’s director is under a duty, subject to the rules and regulations of the MTC, to properly maintain and repair the highways under the MTC’s jurisdiction.
 
 See Mohundro v. Alcorn County,
 
 675 So.2d 848, 853-54 (Miss.1996) (stating that “road maintenance and repair are discretionary rather than ministerial functions”).
 

 ¶ 26. The statute governing the placement of traffic-control devices is found in Mississippi Code Annotated section 63-3-303 (Rev.2004). Section 63-3-303 states in part:
 

 The commissioner of public safety and the state highway commission shall place and maintain such traffic-control devices conforming to its manual and specifications, upon all state and county highways
 
 as it shall deem necessary
 
 to. indicate and to carry out the provisions of this chapter or to regulate, warn, or guide traffic.
 

 (Emphasis added);
 
 see Willingham v. Miss. Transp. Comm’n,
 
 944 So.2d 949, 953 (¶¶ 12-14) (Miss.Ct.App.2006) (stating that the clear meaning of section 63-3-303 is to create a statutory duty that must be carried out in a discretionary matter).
 

 ¶ 27. The above statutes do not impose any specific directives “as to the time, manner, and conditions for carrying out” the MTC’s duty in maintaining highways or posting traffic-control or warning devices; thus, the above duties are not ministerial in nature.
 
 See Collins,
 
 876 So.2d at 289 n. 9. In fact, all three statutes require that the MTC use its judgment and discretion in carrying out the duties prescribed therein.
 
 See Dancy,
 
 944 So.2d at 16(¶ 19).
 

 ¶ 28. Finally, the duty to maintain highways and place warning signs clearly requires the MTC to consider the policy considerations of doing so.
 
 See id.
 
 at 18(¶ 23) (stating that “it must be presumed that [an] agent’s acts are grounded in policy when exercising ... discretion”);
 
 cf. Stewart v. City of Jackson,
 
 804 So.2d 1041 (Miss.2002) (stating that section 11-46-9(l)(d) did not provide immunity to the city and the driver as the discretionary act of deciding to help an invalid exit a van did not implicate any social, economic, or political policy).
 

 ¶ 29. In applying the law to the facts of the case, the record clearly reflects that the MTC used its discretion and considered the policy implications of maintaining Highway 8 in the way that it did. Highway 8 was within Dickerson’s, the MTC’s former District Two Engineer, district at the time he was District Engineer. Dickerson stated both in his deposition testimony, as well as in his affidavit, that he was responsible for making judgment calls regarding the maintenance of highways in his district as to when work appeared to be necessary, what type of work was to be performed in such a situation, and in what order the work was to be done. In fact, Dickerson himself examined Highway 8 and found it to be within MTC
 
 *971
 
 standards and regulations and made policy recommendations accordingly.
 

 ¶ 30. In turn, the Appellants do not point to any evidence that the MTC did not have discretionary authority to maintain Highway 8 in the manner that it did. Although the Appellants briefly cite to a section in the MTC’s Design Manual which offers an “overall objective” as to the design of the highways within the MTC’s jurisdiction, the Appellants fail to cite to any of MTC’s own internal guidelines and policies that it
 
 must
 
 maintain its roads in ways, in which the Appellants contend, it should have been done.
 
 See
 
 Miss.Code Ann. § 65-1-65;
 
 cf.,
 
 S.W., 974 So.2d at 259 (¶¶ 12-13) (finding that DHS was not immune from suit pursuant to section 11-46-9(l)(d) when DHS had a duty to investigate allegations of abuse pursuant to Mississippi Code Annotated section 43-15-5 (Rev.2004) and that to carry out these duties, DHS had developed mandatory guidelines and procedures that DHS had failed to comply with in investigating the alleged abuse of S.W.).
 

 ¶ 31. For the above reasons, we find that the trial court properly granted the MTC’s motion for summary judgment based on the discretionary exception from liability pursuant to section 11 — 46—9(l)(d).
 

 III. “Fraisier’s Octupus”
 

 ¶ 32. Jim Frasier created the term “Frasier’s Octopus” in his 1999 law review article entitled, “A Review of the Substantive Provisions of the Mississippi Governmental Immunity Act: Employees’ Individual Liability, Exemptions to Waiver of Immunity, Non-jury Trial, and Limitation of Liability,” 68 Miss. L.J. 703 (1999). In Frasier’s 2007 article on the same subject matter, Frasier states that the exemptions [in section 11-46-9] “are disjunctive in nature, and thus, ‘like an octupus’s arms; even if one does not get you, another one may.’ ” Frasier, 76 Miss. L.J. at 982-83 (quoting Frasier, 68 Miss. L.J. at 743).
 

 ¶ 33. We find that the concept behind “Frasier’s Octupus” applies in this case. Because we have found summary judgment appropriate as to section 11-46-9(l)(d), we need not engage in any analysis regarding the Appellants’ claim as to section ll-46-9(l)(v). In other words, “[as] established by precedent of both this Court and the supreme court, where any of the immunities enumerated in section 11^49-9(1) apply, the government is completely immune from the claims arising from the act or omission complained of.”
 
 Willing,
 
 958 So.2d at 1255(¶ 40);
 
 see State v. Hinds County Bd. of Supervisors,
 
 635 So.2d 839, 842 (Miss.1994) (stating that “[w]hen the State is sued to determine whether a state statute or action is unconstitutional, the State cannot be held liable for damages if the conduct falls within one of the exceptions found in [Mississippi] Code [Annotated] [s]ection 11-46-9”). For the above reasons, the Appellants’ argument that section 1146-9(l)(v) saves their case is without merit.
 

 ¶ 34. THE JUDGMENT OF THE CALHOUN COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Joe and Joyce Knight filed a complaint as the wrongful death beneficiaries of Charles Prather. Brandi Holland filed a complaint as the wrongful death beneficiary of Carolyn Prather. By agreement between the parties, the two cases were consolidated for discovery and trial. Joyce Knight dismissed her claim with prejudice by an agreed order dated December 29, 2004. For the sake of clarity, we will refer to Joe Knight and Brandi Holland as the "Appellants’' throughout this opinion.
 

 [2]
 

 . We note: "The plain language of [11 — 46— 9(l)(d) ] indicates that even if a governmental entity abuses its discretion when performing a discretionary function or duty, it is immune from liability.”
 
 Dozier v. Hinds County,
 
 354 F.Supp.2d 707, 713-14 (S.D.Miss.2005). "Because of the plain language of the statute, reading a duty of ordinary care into the statute came under substantial criticism.”
 
 Id.
 
 at 714 (citing Robert F. Walker,
 
 Comment, Mississippi Tort Claims Act: Is Discretionary Immunity Useless?,
 
 71 Miss. L.J. 695 (Winter 2002)). In
 
 Collins v. Tallahatchie County,
 
 876 So.2d 284, 289-90(¶ 17) (Miss.2004), the supreme court rejected earlier precedent and expressly stated that section 11 — 46—9(l)(d) does not impose a duty of ordinary care.
 

 [3]
 

 . As we discuss in our analysis, pursuant to sections 65-1-61 and 65-1-65, we disagree with the Appellants’ contention the MTC is “charged with the duty to keep existing bridges and roadways in compliance with the latest safety designs and appurtenances.”